UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DONTRELL BURTON,

                    Plaintiff,                                Case No. 2:24-cv-41

v.                                                            Honorable Maarten Vermaat

UNKNOWN NICKELSON et al.,

                    Defendants.
_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.[2] The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP officials and medical staff: Correctional Officer Unknown Nickelson, Sergeant Unknown Allan, Sergeant Unknown Perry, Psychologist

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] MDOC's Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=964977 (last visited May 9, 2024).

Unknown Harris, and Inspector Unknown Wealton. (Compl., ECF No. 1, PageID.1, 2.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.2.)

In Plaintiff's complaint, he alleges that on January 18, 2024, Defendant Nickelson "verbally sexually harassed" Plaintiff "at med[icine] line pass."[3] (*Id.*, PageID.3.) Specifically, Plaintiff alleges that Defendant Nickelson stated: "At least I didn't have a dildo up my ass [homophobic slur]." (*Id.*) Plaintiff claims that "she said this with so much rage and anger," and "she was talking about a misconduct [Plaintiff received] on 11/1/23" from a non-party correctional officer. (*Id.*)

After Defendant Nickelson's comment, Plaintiff "tried to go to the sergeants, such as [Defendant] Allan and [Defendant] Perry, to file for PREA [(Prison Rape Elimination Act)] but they wouldn't let [Plaintiff]." (*Id.*) Plaintiff then told his psychologist, Defendant Harris, about Plaintiff's "situation, but [Harris] didn't do [any]thing about it but told [Plaintiff] to be a man and just move on." (*Id.*)

A few days later, Plaintiff "talked to" Defendant Wealton about Plaintiff's "situation and she told [Plaintiff] that she was [going to] call [Plaintiff] out that same day to talk . . . but she left right after she left [Plaintiff's] cell." (*Id.*) Plaintiff states that at that time, he felt that he did not have anybody "to turn to" and contemplated suicide. (*Id.*) Plaintiff "wrote several grievances on [Defendant] Nickelson," but as of the date that he filed his complaint, Plaintiff had not yet heard back. (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims under the Eighth Amendment regarding Defendant Nickelson's sexual comment, the actions of

---

[3] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

Defendants Allan, Perry, and Wealton after this comment, and Plaintiff's mental health care, and under the First and Fourteenth Amendments regarding Plaintiff's use of the grievance procedure.[4] As relief, Plaintiff seeks injunctive relief in the form of all Defendants being fired from their jobs. (*Id.*, PageID.4.)

**Failure to State a Claim**

II.    A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

---

[4] To the extent Plaintiff contends that Defendants violated the requirements of the PREA, Plaintiff cannot maintain such a claim. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))).

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Injunctive Relief

Plaintiff seeks only injunctive relief in this action. (*See* Compl., ECF No. 1, PageID.4.) Specifically, Plaintiff asks that "the Court . . . fire" Defendants from their jobs. (*Id.*)

The United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility or release from incarceration moots a prisoner's injunctive and declaratory claims. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Additionally, past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again, and injunctive relief typically is not available "absent a sufficient likelihood that [the plaintiff] will again be wronged in a similar way. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (addressing injunctive relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. at 488, 495–96 (1974).

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective and injunctive relief is unavailable to him.

Furthermore, courts have found that they do not have the authority to order that correctional officials be terminated from their employment. *See, e.g.*, *Williams v. Maynard*, No. 23-CV-1320, 2023 WL 3674332, at *1 n.3 (E.D. Pa. May 25, 2023) (collecting cases); *Pagonis v. Raines*, No. 4:17-CV-01-DC-DF, 2018 WL 9240919, at *4 (W.D. Tex. Aug. 10, 2018) ("'Federal courts are not prison managers' and injunctive relief in the form of an order to terminate a prison official's employment is not available in a § 1983 action." (citations omitted)), *report and recommendation adopted*, No. PE:17-CV-00001-DC, 2018 WL 9240916 (W.D. Tex. Sept. 10, 2018)

Accordingly, for these reasons, Plaintiff's action is subject to dismissal because he seeks injunctive relief that is not available to him.

Moreover, even setting aside this issue and addressing the merits of Plaintiff's claims, as explained below, Plaintiff's claims are subject to dismissal for failure to state a claim.

### B.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted

with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

### 1.    Defendant Nickelson

Plaintiff alleges that Defendant Nickelson "verbally sexually harassed" Plaintiff "at med[icine] line pass" on January 18, 2024, stating: "[a]t least I didn't have a dildo up my ass [homophobic slur]." (Compl., ECF No. 1, PageID.3.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit Court has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal

abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

9

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on one occasion, Defendant Nickelson made a sexual comment and used a homophobic slur. (Compl., ECF No. 1, PageID.3.) Nothing in the complaint suggests that Defendant Nickelson physically touched Plaintiff, and unlike in *Rafferty*, Plaintiff's allegations do not suggest that Defendant Nickelson made the sexual remark on more than one occasion or that the remarks were made in a private or personal setting. (*See id.*)

Under these circumstances, Defendant Nickelson's remark, which was made on one occasion, while offensive and unprofessional, does not evidence the sort of repeated, coercive sexual demands at issue in *Rafferty*. As a result, the alleged verbal sexual harassment falls short of the severity necessary to state an Eighth Amendment claim. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Nickelson will be dismissed.

### 2.    Defendants Allan, Perry, and Wealton

As to Defendants Allan and Perry, Plaintiff alleges that after Defendant Nickelson's comment, he "tried to go to the sergeants, such as [Defendant] Allan and [Defendant] Perry, to file for PREA but they wouldn't let [Plaintiff]." (Compl., ECF No. 1, PageID.3.) With respect to Defendant Wealton, Plaintiff alleges that a few days after Defendant Nickelson's comment, he "talked to" Defendant Wealton about Plaintiff's "situation and she told [Plaintiff] that she was [going to] call [Plaintiff] out that same day to talk . . . but she left right after she left [Plaintiff's] cell." (*Id.*) Plaintiff presents no other allegations against these Defendants.

To the extent that Plaintiff intended to raise an Eighth Amendment failure-to-protect claim against these Defendants, to show liability for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop*, 636 F.3d at 766–67; *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate

indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

As an initial matter, Plaintiff does not allege facts showing that Defendants Allan, Perry, or Wealton were present when Defendant Nickelson made the comment to Plaintiff. (*See* Compl., ECF No. 1, PageID.3.) And, even if any of these Defendants were present, Plaintiff fails to allege facts suggesting that they could have intervened to prevent Defendant Nickelson from making the comment to Plaintiff.

Further, although Plaintiff alleges that he asked Defendants Allan and Perry to file a PREA grievance and he advised Defendant Wealton about his unspecified "situation," Plaintiff fails to allege any facts about what he told these Defendants. Because Plaintiff does not allege any facts about what he told these Defendants, he fails to show that these Defendants were aware of any circumstances that posed a substantial risk of harm to Plaintiff. The fact that Plaintiff asked Defendants Allan and Perry for a PREA grievance, on its own, without additional facts suggesting that he told these Defendants why he wanted a PREA grievance, does not show that Defendants Allan and Perry were aware of a substantial risk of harm to Plaintiff. Therefore, under the circumstances alleged in the complaint, Plaintiff necessarily fails to show that Defendants Allan, Perry, and Wealton disregarded a substantial risk of harm to Plaintiff because he fails to show that they knew that he faced any such risk of harm.

Moreover, to the extent that Plaintiff seeks to hold Defendants Allan, Perry, and Wealton liable due to their supervisory positions, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat

superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Additionally, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Allan, Perry, and Wealton encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendants Allan, Perry, and Wealton were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed

to allege that Defendants Allan, Perry, and Wealton engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

Therefore, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants Allan, Perry, and Wealton will be dismissed.

### 3.    Defendant Harris

Plaintiff alleges that at an unspecified time after Defendant Nickelson's comment, Plaintiff told his psychologist, Defendant Harris, about his "situation, but [Harris] didn't do [any]thing about it but told [Plaintiff] to be a man and just move on." (Compl., ECF No. 1, PageID.3.) The Court construes this allegation to raise an Eighth Amendment medical care claim.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To show a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff alleges that he told Defendant Harris about Plaintiff's "situation" and that Defendant Harris told Plaintiff "to be a man and just move on," however, Plaintiff fails to allege any facts about what he actually told Defendant Harris. (Compl., ECF No. 1, PageID.3.) Without any facts about what Plaintiff told Defendant Harris, Plaintiff fails to show that Defendant Harris knew about Plaintiff's mental health needs. Plaintiff later alleges that he "felt like giv[ing] up [and] like committing suicide," however, Plaintiff does not allege that Defendant Harris had any awareness of this. (*Id.*) Under these circumstances, although Defendant Harris's comment to Plaintiff may have been unprofessional, Plaintiff fails to allege any facts showing that Defendant Harris was aware of Plaintiff's serious mental health needs, let alone that Harris knew of Plaintiff's serious mental health needs and disregarded them.

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendant Harris.

### C. Claims Regarding Plaintiff's Use of the Grievance Procedure

Plaintiff alleges that he "tried to go to the sergeants, such as [Defendant] Allan and [Defendant] Perry to file for PREA but they wouldn't let [Plaintiff]." (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that he "wrote several grievances on [Defendant] Nickelson," but

as of the date that he filed his complaint, Plaintiff had not yet heard back. (*Id.*) The Court construes these allegations to raise claims under the First and Fourteenth Amendments regarding Plaintiff's use of the grievance procedure. The Court first addresses any intended Fourteenth Amendment due process claims.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Furthermore, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (citing, *inter alia*, *Diamond v. Charles*, 476 U.S. 54, 64–65

(1986)); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person." (citing *Diamond*, 476 U.S. at 64–65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002))).

Moreover, to the extent that Plaintiff intended to allege that Defendants violated his right to petition the government, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendants' actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

16

Accordingly, any intended First Amendment and Fourteenth Amendment claims regarding Plaintiff's use of the grievance procedure will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   June 7, 2024                          /s/ *Maarten Vermaat*
                                               Maarten Vermaat
                                               United States Magistrate Judge